**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTWAN D. MORGAN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.:  5:25-cv-01909-JMG |
| | : | |
| PEPSICOLA METROPOLITAN | : | |
| BOTTLING COMPANY | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                    **May 21, 2026**

### I.      OVERVIEW

Plaintiff Antwan D. Morgan, proceeding *pro se*, brings claims under Title VII against

Defendant, Pepsicola Metropolitan Bottling Co., also known as Bottling Group, LLC. *See* Compl.

at 2-3 (ECF No. 2). Plaintiff alleges that Defendant discriminated against him by failing to promote

him, providing him with unequal terms and conditions of his employment, not paying him

commissions, and retaliating against him. Defendant has filed a motion for summary judgment,

seeking summary judgment on all of Plaintiff's claims. *See generally* Def.'s Mem. of L. in Supp.

of Mot. for Summ. J. ("Def.'s Mem. in Supp.") (ECF No. 44-2). For the following reasons,

Defendant's motion is **GRANTED**.

### II.      BACKGROUND[1]

On February 14, 2018, Plaintiff began working for Defendant, the world's largest bottler

and distributor of Pepsi-Cola beverages, as a part-time merchandiser in Allentown, Pennsylvania.

---

[1] In response to a motion for summary judgment, the Court requires the nonmovant—here,
Plaintiff—to file "a separate 'statement of disputed facts' responding to the numbered paragraphs
set forth in the movant's statement of undisputed facts." *See* Policies and Procedures, Gallagher,

*See* Statement of Undisputed Material Fact in Supp. of Def.'s Mot. for Summ. J. ("SUMF") ¶¶ 1, 4 (ECF No. 44-3). He earned $15.60 per hour and did not receive commissions. *See id.* ¶ 7. In this position, Plaintiff "was responsible for product merchandising and building customer relationships in stores that carry Pepsi products in the Allentown location's sales territory." *See id.* ¶ 5. Plaintiff stocked shelves, rotated shelved products, set up displays, stocked and rotated products in coolers, organized products in storage rooms, and moved products from storage to the sales floor. *See id.* ¶ 6.

Plaintiff remained in this part-time position for more than one year. *See id.* ¶¶ 4, 8. He complained to his manager, Jeremy Lebo, "constantly" about being a part-time merchandiser

---

J. at § II.B.5.b. Plaintiff needed to explain his "basis for disputing the fact and cite evidence in the record supporting" his position. *See id.* Plaintiff also had to state additional facts under the heading "statement of additional facts" that he believes precludes summary judgment. *See id.*

The Court acknowledges that Plaintiff is *pro se*, but Plaintiff is not excused from abiding by the Court's procedural rules. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (explaining pro se litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants" (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court made clear in its Policies and Procedures that if Plaintiff did not "specifically controvert[]" Defendant's statement of undisputed facts, or if Plaintiff disputed a fact without citing supporting evidence, the facts as set forth by Defendant would be deemed admitted. *See* Policies and Procedures, Gallagher, J., at § II.B.5.c.

Even construing Plaintiff's filings liberally, he did not comply with the Court's Policies and Procedures. *See Boone v. Nose*, 530 F. App'x 112, 114 (3d Cir. 2013) (citing *Weaver v. Wilcox*, 650 F.2d 22, 26 (3d Cir.1981)).  He claims to dispute "[t]he timing of Plaintiff's protected activity;" "[w]hether decision-makers were aware of Plaintiff's complaints;" and "[t]he legitimacy of Defendant's stated reasons for its actions." *See* Pl.'s First Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s 1st Opp'n"), at 1 (ECF No. 45). In a second filing, Plaintiff also disputes the strength of his performance, the reasons for keeping him as a part-time employee, Plaintiff's "safety report" regarding the gun, internal and administrative complaints, pretext, and damages. *See* Pl.'s Second Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s 2nd Opp'n"), at 1 (ECF No. 49). But with few exceptions, which the Court will discuss throughout this Memorandum Opinion, Plaintiff failed to cite to the record in making these allegations.

Accordingly, most the facts contained within Defendant's statement of undisputed facts will be deemed admitted. The Court will only consider the facts that Plaintiff attempted to dispute.

instead of full time. *See* App'x to Def.'s Mot. for Summ. J. ("App'x"), at 117 (ECF No. 44-5). Eventually, Lebo promoted Plaintiff to full-time merchandiser on June 30, 2019. *See* SUMF ¶ 8; App'x at 117-18. Plaintiff continued working as a full-time merchandiser until October 18, 2020, but Lebo no longer supervised him after July 2020. *See* SUMF ¶¶ 10, 17.

Plaintiff applied to several other positions within the company. He first sought the Sales Rep - Relief Convenience/Gas (FT/Days) role on January 8, 2020, but was not selected. *See id.* ¶ 11. On September 28, 2020, Plaintiff again applied for the position of Sales Rep - Relief Convenience/Gas. *See id.* ¶ 12. Plaintiff began working as a Pre-Sell Account Manager ("PSAM") Utility on October 18, 2020, which is the same position as Sales Rep - Relief Convenience/Gas. *See id.* ¶ 13.

PSAM workers are sales representatives who service up to one hundred sales accounts on established routes and are expected to generate sales. *See id.* ¶¶ 14-15. They order products, rotate and stock products on customers' shelves and displays, build displays, set up promotional materials, and interact with store management. *See id.* ¶ 15. Defendant pays PSAM employees a relatively low base pay, but they receive commission based on the sales they generate. *See id.* ¶ 16.

As a PSAM Utility worker, Plaintiff retained his merchandiser duties, but he would fill in for absent PSAM employees. *See id.* ¶ 18. PSAM Utility workers were not guaranteed commissions, but they received a higher hourly base rate than PSAM employees. *See id.* ¶ 19. However, a PSAM Utility worker would be paid at the full-time PSAM rate, *i.e.*, lower base pay plus commission, for any period in which their sales would have earned them more as a PSAM worker. *See id.* ¶ 20. Throughout his time as a PSAM Utility employee, Plaintiff received $3,120.05 in commissions. *See id.* ¶ 43.

3

While employed as a PSAM Utility worker, Plaintiff reported directly to Reset Coordinator Tyler Pieper, and Plaintiff was indirectly supervised by Sales District Leader Gerald Douglas. *See id.* ¶¶ 22, 23. Douglas observed that Plaintiff failed to follow Defendant's internal processes and had poor communication.[2] *See id.* ¶ 28. When Plaintiff was a PSAM Utility worker, Plaintiff applied to be a full-time PSAM twice, was interviewed by Douglas twice, and was rejected twice. *See id.* ¶¶ 29-30, 36. During these interviews, Douglas thought Plaintiff's responses demonstrated "a lack of professionalism, an inability to leverage Defendant's internal systems and policies, an inability to articulate real-world scenarios he was exposed to while engaging in PSAM duties, and a lack of ability to demonstrate critical thinking skills." *See id.* ¶ 33. Douglas did not offer Plaintiff the position on either occasion due to his performance deficiencies and poor performance during the interviews. *See id.* ¶¶ 34, 35. Douglas was the sole decision-maker; Former Sales District Leader Scott Aten played no role. *See id.* ¶¶ 35-37. Douglas never interviewed or considered Plaintiff for any other job and is unaware of Plaintiff applying for any other job while employed for Defendant. *See id.* ¶¶ 31, 38.

After Plaintiff met with Pieper on May 7, 2021, they both agreed that Plaintiff would return to his role as a merchandiser. *See id.* ¶¶ 29, 30. Plaintiff signed a summary of this meeting, which acknowledged that Plaintiff had concerns about the workload and responsibilities. *See id.* ¶¶ 41-42; App'x at 47 (Plaintiff confirming signature).

On September 16, 2021, Plaintiff reported to Defendant that a former merchandiser brought a firearm into Defendant's Allentown, Pennsylvania location. *See* SUMF ¶ 44. Plaintiff discussed

---

[2] Plaintiff attempts to rebut Defendant's assertion of poor performance with a screenshot of a text message purportedly from Tyler Pieper dated October 13, 2020, acknowledging Plaintiff's hard work. *See* ECF No. 48, at 1. He also filed cell phone screenshots that appear to be sales metrics seemingly from December 1, 2021, as well as undated cell phone screenshots of the "Team Performance Dashboard." *See* ECF No. 47, at 8-9; ECF No. 46, at 1-2.

the issue with Human Resources Associate Manager Sally Gamble and then-Unit Sales Manager Kait Walsh during a telephone interview, but Plaintiff never mentioned discrimination, retaliation, or not being paid commissions. *See id.* ¶¶ 46-48. After the interview, Defendant determined that the former merchandiser did not bring a gun into the facility and never made threats, but he did keep a gun in his personal vehicle, which violated Defendant's policies. *See id.* ¶¶ 49-51. The merchandiser was given a final warning on September 22, 2021 and told he would be disciplined for subsequent violations. *See id.* ¶ 52.

Plaintiff resigned on September 21, 2021, giving Defendant two weeks' notice. *See id.* ¶ 53. Just three days after submitting his resignation letter, Plaintiff made a complaint via Pepsi's "SPEAK UP" Hotline, reporting that no one believed Plaintiff about his coworker bringing a gun to work because Plaintiff is African American and his coworker is White. *See id.* ¶¶ 56-57. Plaintiff also stated that he had been experiencing racial discrimination for the duration of his employment. *See id.* ¶ 58. The following day, Plaintiff filed another complaint, stating that he experienced "racism and harsh workloads" since he began working for Defendant, and Defendant did not adequately address the gun issue. *See id.* ¶¶ 60-61. Defendant investigated Plaintiff's complaints and determined that Plaintiff's allegations as to the gun incident were adequately addressed, and his claims of racial discrimination were unsubstantiated. *See id.* ¶¶ 65-66.

Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), which was dual-filed with the Equal Employment Opportunity Commission ("EEOC"), on October 20, 2021, alleging race-based discrimination and retaliation. *See id.* ¶¶ 68-69. Plaintiff insists that Lebo discriminated against him by failing to move him from part-time to full-time merchandiser and by assigning Plaintiff heavier workloads than his White coworkers due to his skin color. *See id.* ¶ 71. Additionally, Plaintiff claims that Douglas discriminated and

retaliated against Plaintiff by failing to promote Plaintiff. *See id.* ¶¶ 75, 88. Plaintiff also argues that Defendant discriminated and retaliated against Plaintiff by not paying him commissions. *See id.* ¶¶ 88; App'x at 129A.

Once Plaintiff received the Notice of Right to Sue, Plaintiff brought this lawsuit by completing and filing the Court's *pro se* employment discrimination complaint form. Discovery is now complete, and Defendant seeks summary judgment on all Plaintiff's claims.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure Rule 56(c) provides that the district court must "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, No. 22-1790, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023).

To survive a properly supported motion for summary judgment, the nonmoving party, Plaintiff in this case, must present affirmative evidence of specific facts to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S at 256-57; *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advoc., Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir.2005)) ("Although the non-moving party receives the benefit of all factual

inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Colkitt*, 455 F.3d at 201; FED. R. CIV. P. 56(c)(1)(A) (requiring any party asserting a fact to "cit[e] to particular parts of materials in the record"). Statements of Disputed Facts are not evidence, so a "district court may not rely solely on" them to justify a finding that a dispute of material fact exists. *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) (internal citation omitted).

In applying this standard, "the court must construe the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences." *Barton & Pittinos v. Smithkline Beecham Corp.*, 118 F.3d 178, 181 n.3 (3d Cir. 1997) (citing *Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.)*, 74 F.3d 420, 433 n.10 (3d Cir. 1996)). At the summary judgment stage, the Court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these are tasks left for the fact-finder." (internal quotation marks omitted)). Instead, the Court's task is to identify and explain the law governing the matter, and then, in light of that law, determine whether there remains a genuine issue of fact for trial. *Id.* However, the Court should not consider evidence that is inadmissible at trial. *See Bristol v. Settle*,

457 F. App'x 202, 204 (3d Cir. 2012) (citing *Pamintuan v. Nanticoke Mem'l Hosp.,* 192 F.3d 378, 387 n.13 (3d Cir.1999)).

## IV.    ANALYSIS

Plaintiff brings claims against Defendant for failure to promote, unequal terms and conditions of his employment, retaliation, and unpaid wages (*i.e.*, unpaid commission). *See* Compl., at 2-3. These claims stem from Douglas deciding not to promote Plaintiff, Plaintiff's experiences working under Lebo, and Plaintiff allegedly not receiving commission. Because Plaintiff's claims arising from his work experience with Lebo are time-barred and Plaintiff has not met his burden as to the remaining claims, Defendant is entitled to summary judgment on all of Plaintiff's claims.

### A.  Time-Barred Claims

"Under Title VII, a claimant in Pennsylvania must file a discrimination charge with the EEOC within 300 days of an unlawful employment practice." *Mikula v. Allegheny Cnty. of PA*, 583 F.3d 181, 185 (3d Cir. 2009) (citing 42 U.S.C. § 2000e-5(e)(1); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000)). Conduct that occurred more than 300 days before Plaintiff filed the charge is time-barred. *See Endo Pharms. Inc. v. Fryer*, No. CV 17-2245, 2020 WL 4748296, at *4 (E.D. Pa. Aug. 17, 2020) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 113 (2002); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B)). Defendant argues that Plaintiff's claims arising from events occurring on or before December 24, 2020 are time-barred. *See* Def.'s Mem. in Supp., at 4. The Court agrees. Because Plaintiff filed a Complaint with the PHRC on October 20, 2021, conduct that occurred before December 24, 2020 is not actionable. *See* SUMF ¶ 68; *Mikula*, 583 F.3d at 185.

Plaintiff's claims that arise from working for Lebo as a part-time merchandiser all occurred in July 2020 or earlier, so those claims are time-barred. *See* SUMF ¶¶ 8-10. Plaintiff asserts that

8

Lebo failed to promote him when Lebo did not move Plaintiff from part-time merchandiser to full-time merchandiser.[3] *See id.* ¶¶ 71, 73. Additionally, Plaintiff seems to claim that Lebo retaliated against him by not promoting him because Plaintiff made an internal complaint while he was a part-time merchandiser. *See id.* ¶ 89. Plaintiff also contends that he endured "unequal terms and conditions of employment" while working as a part-time merchandiser but there were no other instances of such treatment. *See* App'x at 125-27. But Plaintiff became a full-time merchandiser on June 30, 2019, and he no longer reported to Lebo as of July 2020. *See* SUMF ¶¶ 8-10. This conduct all predates December 24, 2020. Accordingly, Plaintiff's failure to promote claim as to Lebo's alleged failure to promote, Lebo's alleged retaliation, and Plaintiff's "unequal terms and conditions of employment" claim are time-barred. Defendant's motion for summary judgment as to these claims is **GRANTED**.

### B.  Failure to Pay Commission

When analyzing a Title VII discrimination claim under the pretext theory, the Court uses the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff "bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence." *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). For Title VII discrimination, those elements are: (1) Plaintiff is a member of a protected class; (2) Plaintiff was qualified for the position he sought to attain or retain; (3) Plaintiff suffered an adverse employment action; and (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). If

---

[3] This allegation is inaccurate, as Plaintiff was eventually promoted to full-time merchandiser. SUMF ¶ 74.

9

Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for Plaintiff's rejection. *Sarullo*, 352 F.3d at 797 (quoting *McDonnell Douglas*, 411 U.S. at 82). If Defendant meets its burden, then Plaintiff must establish "by a preponderance of the evidence that [Defendant's] proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Id.*

Defendant argues that Plaintiff's discrimination claim based on the alleged failure to pay commissions fails because the record shows Plaintiff did, in fact, receive commissions while he was employed as a PSAM Utility. *See* Def.'s Mem. in Supp., at 7. At his deposition, Plaintiff was confronted with his paystubs that contained commission payments, and he did not refute it. *See* App'x at 52-56. Rather, Plaintiff simply said he did not recall whether he received commission during those pay periods. *See id.*

Nor did Plaintiff point to anything that disputes Defendant's evidence. *See generally* Pl.'s First Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s 1st Opp'n") (ECF No. 45); Pl.'s Second Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s 2nd Opp'n") (ECF No. 49). Instead, Plaintiff attached charts that appear related to sales, but they tell the Court nothing about his commissions— if he was even entitled to commissions at all for those supposed sales. *See* ECF 46 at 1-2; ECF 47 at 8-9. And in his deposition, Plaintiff explained that his "evidence" of not being paid commissions came from Peter Dudine and Gerald Douglas telling him he was not earning commission. *See* App'x at 79-82. These statements are inadmissible hearsay, which the Court cannot consider as grounds for defeating summary judgment. *See Roberts v. Borough of Manheim*, No. CV 23-832, 2024 WL 1538424, at *2 n.4 (E.D. Pa. Apr. 9, 2024), *aff'd,* No. 24-1830, 2025 WL 2945672 (3d Cir. Oct. 17, 2025) (citing *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009)).

Because Plaintiff has not pointed to admissible evidence on summary judgment that creates a genuine dispute as to whether he received commissions, Plaintiff cannot show that he suffered an adverse employment action, *i.e.*, that he did not receive commissions. Accordingly, summary judgment is **GRANTED** for Defendant on Plaintiff's discrimination claim based on the alleged failure to pay commission.

### C. Failure to Promote

The *McDonnell Douglas* framework also applies to failure to promote claims. *See, e.g.*, *Bearer v. Teva Pharms. USA, Inc*, No. CV 19-5415, 2021 WL 4145053, at *9-11 (E.D. Pa. Sept. 8, 2021). To state a *prima facie* case for failure to promote, Plaintiff must show: "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought; (3) [he] suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably." *McLintock v. City of Phila.*, 504 F. Supp. 3d 411, 422-23 (E.D. Pa. 2020), *aff'd*, No. 20-3453, 2022 WL 395995 (3d Cir. Feb. 9, 2022). If Plaintiff can establish a *prima facie* case, the burden shifts to Defendant "to produce evidence of a legitimate, nondiscriminatory reason for its action." *Welch v. Millersville Univ.*, No. 5:20-CV-4942, 2022 WL 131258, at *5 (E.D. Pa. Jan. 14, 2022) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000)). If Defendant meets this burden, then the burden shifts back to Plaintiff to "prove that the legitimate reasons offered by the employer were not its true reasons, but merely a pretext for discrimination." *Id.* (citing *Reeves*, 530 U.S. at 142-43).

The Court assumes without deciding that Plaintiff can state a *prima facie* case.[4] Defendant contends that it did not offer Plaintiff the position because he had a history of performance

---

[4] Defendant argues it is entitled to summary judgment because Plaintiff cannot show that Defendant's decision not to promote him raises an inference of discrimination. *See* Def.'s Mem. in Supp., at 9. Specifically, Defendant claims that "[t]here is no record evidence that these PSAM

11

deficiencies and performed poorly during the interview. *See* Def.'s Mem. in Supp., at 10. This satisfies Defendant's burden.

To defeat summary judgment, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Plaintiff claims to have introduced evidence of strong work performance, expanded job responsibilities, and an ability to perform at a high level. *See* Pl.'s 1st Opp'n, at 2. He supports this assertion with a screenshot of a text message from Pieper.[5] *See* Pl.'s 2nd Opp'n, at 1; ECF 48, at 1. The text message was a generic, encouraging text message, telling Plaintiff congratulations, thanking him for his hard work, and stating that Plaintiff is a team player. *See id.* But Pieper was a different supervisor who played no role in Plaintiff's subsequent job interviews, and he sent Plaintiff the message when Plaintiff was working in a different job. *See*

---

positions remained open after" Defendant rejected Plaintiff for this position or who, if anyone, filled the position. *See id.* at 9-10 (citing *Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 353 (E.D. Pa. 2013)). But Defendants failed to provide support for this lack of evidence. *See Rabuffo v. VCA, Inc.*, 222 F. Supp. 3d 406, 413 (E.D. Pa. 2016) ("[T]he moving party must 'affirmatively show the absence of evidence in the record,' which 'may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence,' or, '[i]f there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record.'" (second alteration in original) (quoting *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 84 n.2 (3d Cir. 1987))). Defendant submitted a declaration of Douglas, but nowhere did Douglas state the status of the positions which Plaintiff applied for and was subsequently denied. *See* App'x 28-31. Thus, Defendant failed to show no record evidence.

[5] Plaintiff also states in his deposition—but mentions nowhere in his filings—that "Robert Mantos had already stated to me that I would not get the position as long as Scott was in the building." *See* App'x at 123. Even if this were properly raised in Plaintiff's opposition, the Court cannot consider it because it is inadmissible hearsay. *See Roberts*, 2024 WL 1538424, at *2 n.4 (citing *Smith*, 589 F.3d at 693) (explaining party cannot rely on inadmissible hearsay).

SUMF ¶¶ 29, 31; *compare* ECF 48, at 1, *with* SUMF ¶¶ 17, 22 (showing text message sent before Plaintiff began PSAM Utility position).

This text message does not satisfy *Fuentes*. An encouraging text message from one supervisor whom Plaintiff just began working for does not give the factfinder a reason to disbelieve that a different supervisor who had the opportunity to observe Plaintiff's performance in a different job and during two job interviews. *Compare* ECF 48, at 1, *with* SUMF ¶¶ 17, 22. Nor does it show that Douglas had an invidious discriminatory reason.[6] Thus, Plaintiff did not meet his burden as to this failure to promote claim. Defendant's motion as to failure to promote is **GRANTED**.

### D. Retaliation

Under Title VII, Defendant cannot discriminate against Plaintiff because he "has opposed any practice made an unlawful employment practice by this subchapter, or because [Plaintiff] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *See* 42 U.S.C. § 2000e-3(a). Like Plaintiff's other claims, Title VII retaliation claims are also analyzed under the *McDonell Douglas* burden shifting framework. *See Onely v. Redner's Markets, Inc.*, 697 F. Supp. 3d 410, 425 (E.D. Pa. 2023).

To establish a *prima facie* case for retaliation, Plaintiff must show that (1) he "engaged in a protected activity," (2) he "suffered an adverse employment action," and (3) "there was a causal connection between the participation in the protected activity and the adverse action." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 279 (3d Cir. 2024) (quoting *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)). Plaintiff engaged in a protected activity if he (1) participated in Title VII proceedings, or (2) opposed what an employee reasonably believes to be

---

[6] If anything, the record shows that Douglas likely did not have a discriminatory reason, as Douglas himself is an African American man. *See* SUMF ¶ 24.

conduct that is unlawful under Title VII. *Onely*, 697 F. Supp. 3d at 425 (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006)). And as to causation, the temporal proximity of the report and the alleged adverse employment action may provide an inference of retaliation at this stage in the litigation. *See LeBoon v. Lancaster Jewish Cmty. Ctr.*, 503 F.3d 217, 232 (3d Cir. 2007) ("Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment.").

Plaintiff contends that he "engaged in protected activity, including internal complaints of discrimination during his employment" and "experienced adverse employment actions, including denial of promotion and issues relating to compensation." *See* Pl.'s 1st Opp'n, at 1. Plaintiff appears to be referring to when he made an internal complaint via Pepsi's complaint line when he was a part-time merchandiser, when he submitted a SPEAK UP report on September 24, 2021, and when he submitted a SPEAK UP report on September 25, 2021. *See* SUMF ¶¶ 56-61, 89.

Defendant argues that Plaintiff's retaliation claim fails as to failure to promote because Plaintiff cannot prove a causal connection. *See* Def.'s Mem. in Supp., at 18. The Court agrees. Causation requires the adverse employment action to occur "after or contemporaneous with [the] protected activity." *Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 355 (E.D. Pa. 2013). But Douglas denied Plaintiff's PSAM applications while Plaintiff was a PSAM Utility— well before Plaintiff's SPEAK UP complaints. *See* SUMF ¶¶ 36, 56-60. Moreover, Douglas was unaware of any of Plaintiff's discrimination or retaliation complaints until after Plaintiff voluntarily resigned. *See* SUMF ¶ 93; *Day v. New Jersey Dep't of Corr.*, No. 24-2803, 2025 WL 3206676, at *3 (3d Cir. Nov. 17, 2025) ("A reasonable jury could not draw an inference of retaliatory motive, however, where a plaintiff fails to adduce any evidence that the 'individuals

responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted.'" (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015)).

Defendant also argues that Plaintiff cannot establish a *prima facie* retaliation case as to not paying him commissions because he was paid commissions. *See* Def.'s Mem. in Supp., at 18. As the Court discussed with respect to Plaintiff's discrimination claim for failure to pay commission, Plaintiff did not establish that he suffered an adverse employment action. So this retaliation claim too fails.

Plaintiff has not met his burden as to his retaliation claims. Accordingly, Defendant's motion for summary judgment on the retaliation claims is **GRANTED**.

## V.    CONCLUSION

The Court finds that no reasonable fact finder could reach a judgment for the Plaintiff on any of Plaintiff's claims, even drawing all inferences in his favor. As the non-moving party, Plaintiff was required to put forth evidence to generate a genuine dispute of material fact, and he has not done so for any of these claims. Accordingly, the Court **GRANTS** summary judgment for Defendant on Plaintiff's claims.

An appropriate Order follows.

BY THE COURT:


 */s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

15